Oyez! Oyez! Oyez! All persons having any manner or form of business before the Honorable United States Court of Appeals for the Fourth Circuit are admonished to draw nigh, and give their attention, for the Court is now sitting. God save the United States and this Honorable Court. You may be seated. Mr. Amos, when you're ready. Good morning. May it please the Court, Chief Judge, my name is Joseph Amos, and I represent Fire & Safety Investigation Consulting Services, LLC, and Christopher Harris, its owner. I will refer to them, collectively, as Fire & Safety, unless otherwise necessary. My clients were the defendants in the District Court, and are the appellates before this Honorable Court. This case originates from the Northern District of West Virginia, where the District Court was confronted with competing motions for summary judgment in regard to whether Fire & Safety appropriately paid its safety consultants overtime under the Fair Labor Standards Act. Your case is pretty straightforward, isn't it? I mean, it's either a question of whether this overtime was paid in compliance with the Fair Labor Standards Act, or not. And the question here that's presented, hasn't it been somewhat considered by other circuits? It has, Your Honor. And is none of it in your favor? Well, I would disagree with that, respectfully. Tell me how so. Well, the Second Circuit, in the Adams Court, actually remanded the issue of whether a blended rate would be permissible under a 309 payment scheme. The Adams Court actually stated, this type of pro rata, we call it a blended rate, or pro rata deduction from the regular overtime hours worked, has no irregularities. Is that the case? Adams was brought up. I was thinking about the case because it was interesting. It seems like the employee actually benefits in it, but the court sent it back. And they said if you work over the 60 hours or so, you know, you got this rate, but if you worked under it, went down one hour, let's say to 59, then the rate you got was like $11.67, which the court said it didn't meet it because that wasn't overtime. That wasn't what you were getting overtime, which time and a half would have been $15. Is that the case? I believe you're thinking of Lopez. And Lopez is out of the Fifth Circuit. The Adams Court was a case in which house parents worked 60 hours in a week. And it was made up of 20 hours of overtime. They were paid time and a half for those 20 hours. That's right. They got them up to $700. Yes, exactly. And when they worked less than their full 60 hours, they were deducted 160th of their pay. And yes, they received... And the 160th in this case was $11.67. And they received more money, yes. But they said that's not right because if you did time and a half from the 40 above, it would be $15 an hour. No, they would have made more money in the Adams case. I'm sorry, they would have made less money in the Adams case. The deduction would be $15, not what they were made. In other words, if you move from 60 down to 59, they then docked them $11.67 because that was 160th, right? Yes. And the court said that's not overtime because the overtime would be $15. If you got $10, time and a half times 10 is $15. I understand. Why did you tell me that's not the same case? That's the same case. That is the same case, Your Honor, and I'm sorry. Let me clear the confusion. And the court found a problem with that. So how does that help you? The court respectfully remanded the case back, but if you figure the hourly wage based on the 59 hours as opposed to just looking at the hourly wage for the one hour of deduction, they actually make more money. I got that, but that's not the purpose of the Fair Standard Bank. It's not that they make more money. The question is, are you paying overtime? And they determined, because the difference here is, is a blended rate the same as a regular rate? And they said this thing is a regular rate because you're not paying them anything more because when you take the hour down, it's only $11.67. If it was overtime, it would be $15. That's the problem in your case. The question is, is the blended rate actually a regular rate? Yes, that is the main issue before this court. So how does the Second Circuit case help you? Well, the Second Circuit case was remanded. It said that there are no irregularities as found in Aselta. And we are going to send the case back to the district court to find, one, whether there was an inconsequential issue with paying the blended rate. They called it the pro rater rate. We believe it is an inconsequential issue because they would be paid more than when they worked less than the full hitch in this situation. That's not the standard, though. I think you're right. They would be paid more. But that's not the standard in order to calculate whether they are getting overtime, which is time and a half, for over 40 hours. Yes, they would be getting more, but that's not the standard. Well, the standard which the Department of Labor cites is that it's an actual fact. You don't have to only look at the agreement. What we are arguing is it's a combination of both. But the reason is you don't want employees to go and give what is called a blended rate when it's actually a regular rate, and then when they dock them, they just dock them 160th in this instance in the case that we were talking about, or in this case, what is it, 184th? I guess 168th of it for the two-week period, as opposed to paying them overtime because overtime is time and a half. Yes, Your Honor. And if you look at the agreement, they had a regular rate. When they started the agreement for a hitch rate, these consultants were actually under the traditional method. What's the regular rate? What is the regular rate? Yes. It's what they make for non-overtime work. Which is? In this instance. In this instance, it would be something around the realm of $23. Okay. When the consultants started, they were all on the traditional method. Here's where I think we're running the problem. It seems to me, and correct me if I'm wrong because this is a little confusing kind of case. I actually agree with you. The employee comes out better under the scheme if you follow your reasoning on it. But if under the Fair Labor Standard Act, you have a regular rate for the 40, and then you take that regular rate and do time and a half for everything over it, that's the traditional way of doing it. What you've done is, and I get it. I think it allows it. If, in fact, you did, let's say, have $10 an hour for the first 40, and then you have $15 for the next 20, and you take that and say, well, we're going to pay you a solid $700, I think that's permitted. That's because you've identified the regular rate as being $10 an hour. But if you take it up and say, we're paying you a hitch rate or whatever, a blended rate at $700, and then when you deduct it, and it doesn't, that one-hour deduction doesn't give you a time and a half, but instead gives you one-sixtieth of it, I don't think that's permissible. And I understand your reasoning, Your Honor, but you need to, if you look at the district court's decision, they actually concluded, prior to going on this hitch rate, the consultants were sat down by the owner of the company and told, here's what your straight time rate is. Here's what your overtime rate is. Here's what your full hitch amount is. And 90% of the time, these consultants worked exactly their hitch rate. And what the Department of Labor wants to do is upset the entire agreement, throw it out the window for that 10% they did not work the full hitch, and that 10% where they made more money. And one statistic that I think is very important for this court to know of is that the district court basically latches on to the fact, well, you got paid the blended rate when you worked less than 40 hours. And therefore, the blended rate is the regular rate of pay. So you think you can violate the Fair Labor Standard Tax for a minority of the folks if you, in fact, benefit most of them, 90%, let's say? Your Honor, with the under 40 hours they got paid the blended rate, it happened 60 work weeks out of 1,254. It was de minimis. It's not worth throwing out for all these consultants that worked exactly their hitch. I've never seen a case that said that, to say that you can de minimisly violate it. Intuitively, it makes sense, but I've just never seen one that said it. Well, there is a case that's cited by the Department of Labor numerous times, Bay Ridge, which says the regular rate is the actual rate of pay for non-overtime work. Well, Bay Ridge also says the regular rate has to be computed once you back out all overtime premiums which the employer has given the employee. And so if they had an agreement that you were going to get paid and the district court found that they didn't come out and say there's an agreement, but they did in their decision on page 1276 of the Joint Appendix. They said fire and safety offered evidence that they complied with 778309 by paying consultants a fixed rate that included straight time and overtime pay. They went on to say that Mr. Harris, the owner of the company, sat them down and told them, here's what your straight time pay is, here's what your overtime rate is, and here's what your hitch rate is. And that only happened 90% of the time they worked exactly the hitch. There's 24 consultants in this case, Your Honor, 24 out of the 71 that actually worked exactly 84 hours every single time. And they stand to benefit to get overtime compensation that nobody bargained for. Nobody ever bargained for. They actually worked 84 every single week. And so what the Department of Labor wants to do in this case is to focus in on a very small amount of times. In fact, 60 out of 1,200 in I think it's 54 times that they worked less than 40 hours and got paid that blended rate, which actually overcompensated the employees. And they want to throw out the entire scheme not for just the employees that worked less than the hitch and got paid the blended rate. Is the blended rate in this case the same as the regular rate? No, it's not. What is the regular rate? The regular rate in this case is what Mr. Harris sat them down and told them that they were going to get paid. So I don't understand what that is because if the blended rate – tell me what the blended rate is. Okay, the blended rate is just for bookkeeping purposes for them to take 1 84th of a week if they do not work the full hitch. It simplifies the math greatly for the employer and it overpays the employee. And so there should be no reason to disrupt that. The regular rate is what built the agreement. Okay, these consultants, again, were told, here's what your regular rate is, here's what your overtime rate is, here's what your total hitch rate is, and they work that hitch rate 90% of the time. The regular rate is embedded inside that agreement. Now, when you unwind the agreement, you can still drive back to that regular rate and that overtime rate. So is the blended rate, the hitch rate, divided by 168 in this case times the number of hours worked? The – I'm sorry. It's the blended rate. It's the blended rate. The hitch rate, which is that rate you calculate, again, it says the hitch rate, divided by 168, the number of hours they work, times – and if it's less than that period, then you multiply it times the number of hours worked. Yes. So what's the regular rate? The regular rate was what was used to build the hitch rate. Tell me the formula for the regular rate. What do you mean the regular? Okay. Then tell me what the hitch rate is. The hitch rate is made up of straight time for 40 hours and time and a half for the next 44 hours in a work week. And that's 84 hours for a week. It's 168 hours for a two-week period. What the court needs to really be cautious of – Say that again. It's 40 hours of their straight time, and then 44 hours at time and a half of that equals their weekly – Where did that come from? What is the amount for the 40 hours? Well, Your Honor, and I'll be quick because – Because the hitch rate in here is based upon the 84 hours per week times 268 hours. That's correct, Your Honor. The hitch rate – I don't know anyone that said it was 40 hours, and now you're going to pay 44 hours of time and a half. That would be permissible. You could say we're going to pay you $10 for the 40 hours, and then we're going to pay you $15 per hour for the 44 hours. I think that might be permissible, and I'll ask the other side if that's true because it's confusing. But I don't think that's supported. I believe it is, Your Honor, and I believe it is permissible under 309. All right. I'll ask. Thank you. Ms. Goldberg. Good morning, Your Honors. My name is Rachel Goldberg. May it please the Court, I represent the Secretary of Labor. The question in this case is whether – You said that question for me right there that you just sat down with, and that is insofar as the determination of how is the hitch rate calculated here. Is it that there's a regular rate paid for the first 40 hours, and then time and a half is paid for the 44 hours above that per week? The actual facts show that was not the case. I mean, in theory, that is what an employer is supposed to do, but that is not what this employer, in fact, did. The actual facts here show that this employer paid the exact same hourly rate for every hour of work, non-overtime under 40 and overtime up to 84 per week. Exact same hour every hour of work, and that's what the actual facts show. And it's not just 10 percent of the workers. This was one pay scheme. The employer fire and safety hired all of these employees under the exact same pay agreement. They did the exact same thing as their job duties, and it paid them the same way. When they worked less than the full hitch schedule, that clearly illustrates how they were paying, but they were paying the workers who worked the full schedule the exact same way. That's the second circuit case where you show you work one hour less and it's $11.67. That shows that that's a straight pay the whole time as opposed to $15. Correct, and I think that case is very on point. And you think that's the same thing here? Whether you call it docking or building up from the base of where they pay, if they worked, let's say, 48 hours in a week, are you docking them down from 84 or are you building up to 48? It mathematically is the same, and in the Adams case they discussed it. Don't the employees benefit, though? Maybe he's correct on that. It is true, and it seems counterintuitive in that the employees do benefit, as the second circuit pointed out in Adams. So why has the Fair Labor Standards Act got a problem with that? We don't have a problem with employees benefiting per se, but it reflects they are only benefiting if you buy the fire and safety's premise that overtime was kind of baked in to the fixed hitch rate and, therefore, the blended rate. That premise is a fiction. It's not true, and so, therefore, they weren't benefiting. Why do you say it's not true? Do you have any evidence to counter that? What Mr. Amos said is that we have embedded what our regular rate is. That's embedded. It's a component in the number, and we've got a blended rate now. What we do is we pay this amount out, and you're saying everybody gets the same amount, but they're saying it's embedded. There's a regular rate, and it's already, and what it is, in a sense, people perhaps get a benefit because they may be getting money for overtime they really didn't deserve, but they have accounted for that. I'm not saying I've described this, but they've accounted for that by having arching over that. The rate is here. We've calculated in a blended rate that counts for overtime, and when you put it together, our fixed rate, regular rate, and what they get, even though it seems to be the same, it's already built in. So the sameness is not a matter of not paying overtime, but it's a matter of people benefiting enrichment because of the way we've calculated. So in other words, the point is if the regular rate is here and you have a blended rate that's over there that accounts for it, yes, everybody might get paid the same thing at the end of the day, but I think their position is, but wait a minute. But everyone is getting the overtime. Yes, people, many people, most of them are getting what they shouldn't get, but everybody's covered. Now, Mr. Amos concedes a percentage did not, but what's wrong with that? It's almost like no good deed goes unpunished, I guess they would say. Well, that way of looking at it would be true if, in fact, the fixed hitch included the overtime, but to determine that, an agreement might be relevant, but you always look to the actual facts, and those trump any agreement. And the actual facts here show that even when an employee worked less than 40 hours, they were paid the exact same hourly rate as the employee who worked 84 hours. Basically, you're saying even if they didn't work overtime. Right, they were paid supposedly an overtime rate. And your hourly rate is going to be the same as though you worked 84 hours. Right, and so there's two problems. One, that defies the clear Supreme Court guidance that the regular rate is always the actual fact, and so what they were paid when they didn't work overtime, that's very obvious. They were paid that much per hour, and then they were paid the exact same per hour when they worked overtime. And another kind of way of looking at this is that when an employee worked less than 40 hours a week, if you buy their argument that that included overtime, or let's say an employee worked 48 hours a week, slightly more than 40, if you buy their argument that that included overtime, when you do the math and you back into it, the overtime rate that they would be getting for those eight hours is literally 3.8 percent. I'm sorry, three and a half, 3.8 times their regular rate. Why would an employer pay that much more when an employee works 48 hours than when they work 84 hours when they, if you buy their argument, they're just getting the requisite time and a half. I mean, it defies logic. It's rewarding the employee for working less by basically, in their view, paying them more per hour. It completely defies logic, and it defies Supreme Court precedent, which is you don't look at what the employer says they intended to do or even what the employees supposedly agreed to. You look at what actually happened. Well, I guess the Labor Department, your position is you have to keep records. Is that the real problem, that the records are not kept to make sure that each person gets their regular rate and then overtime above 40? Is that the problem, no matter what the consequences are, whether it's a windfall to the employee or not? Is that your position? No, I mean, there are record-keeping violations here, but that is not what triggers their liability here. Their liability is triggered by the fact that, for whatever reason, administrative ease for themselves, they decided to pay employees the exact same hourly rate for every hour of work, and they didn't include the overtime premium. I know they may legitimately have thought they were including the overtime premium, but the fact of the matter is they didn't calculate it, and the FLSA is quite clear. Congress prescribed that you pay overtime at one and one-half times the regular rate. You have to earn more in your overtime hours than you do in your non-overtime hours. So you mean to tell me, as an employer, I couldn't say, listen, I don't want to have this back office expense, all this accounting stuff. I'm going to do it this way. I'm using Judge Wynn's number. I'm paying everybody in my company $10 an hour. That is your salary, period. I assume people are going to be working overtime, so up to 60 hours, and nobody works more than 60 hours because the place is closed. I'm going to pay 40 times 10 and 15 times 20 and call that the rate, and everybody gets that every week or every two weeks. Is that a violation? If they're not working those hours, it actually is. Why? Wait a minute. Wait a minute. You mean to tell me that an employer can't be generous, overly generous to an employee and say, listen, I know people are working overtime. I don't want to spend the money to figure it out, but I want to make sure everybody's covered, and I'm going to give everybody that rate. That's a violation. You can pay overtime at a higher rate than you're required, but you can't pay a fixed sum for a variable hours, and that's the problem in the hypothetical you posed, whereas you're paying for 60 hours no matter how many hours they work, even if they work 44 hours. Because the government can't figure out overtime. No, it's not because of the government. It's because Congress set up a system that – Congress, oh. Congress can't figure out overtime. Congress set up a system that requires pay per hour. And, I mean, this is my personal impression of why that would be a problem. I know it seems counterintuitive, but basically employers have tried all – and I'm not ascribing this to this particular employer. I know. I'm just giving an example. But employers have come up with all sorts of pay schemes to, we're just going to pay you a fixed sum, you're going to work 60 hours, it doesn't matter how many – you know, sometimes you work 40, sometimes you work 44, sometimes you work 60. The problem in this case, at least from the labor scenes to me, is that your contention may well be, well, it tells you, why don't you pay for 40 hours, pay a certain rate, just pay time and a half over. That's simple. And when you come up with a scheme like this, or at least a different way of doing it, say we're going to give you a lump sum, there's a reason they do it. And it may well be that the hourly rate that they normally would pay could be $10 an hour and then the 15 for that over. But they say, we don't want to pay $10 an hour for the first 40 and 15 over, we'll give a blended. So we'll pay $12 for the whole time period, and that keeps them from having to pay the 15 over the 40, even though it looks like you're benefiting if you work less. So I think that's probably where the Department of Labor is going with this. Am I wrong on that? Well, if the employee says, okay, I'll work for $12 an hour for 40 hours a week, then they are supposed to get $18 an hour any time they work over. It doesn't matter if they think, oh, well, really the 12 was supposed to, you know, pay me, compensate me for when I do work overtime. But I thought the scenario that Judge Gregory gave you was something that might be permitted. That is, you say the regular rate is $40 an hour, and you work 20 over, it's going to be 15. So if you work 20 over, we're going to give you a flat rate of $700. So if you work 60, we'll give you $700. Why is that not acceptable? If you're always working 60, that is perfectly acceptable. And that is what's envisioned in the example that's provided in the regulations. If you work less than 60, you can't give them $700. You wouldn't give them $700, but you're saying you can't just give them one 60th of it. You've got to take off $15 for every one of those hours. Yes, and the example that that, except for when they're working less. Well, yes, excuse me. The example that you're both discussing is discussed in the subsequent regulation at 778310, and it specifically addresses when an employer attempts to pay a fixed sum for variable hours, it's not permissible because it permits an employer basically to back into the math and claim that whatever they've negotiated, whatever they've agreed to with their employees is going to be permissible. And it basically kind of permits retroactive bookkeeping to show compliance with the FLSA, and that's directly contrary to the whole purpose of the overtime provision, which is to make sure employees are paid a premium for their overtime hours and to put pressure on the employer to spread employment. That was one of the original purposes. Because otherwise the employer could just make up whatever it wanted at any time after the fact. Exactly, and that's exactly the problem. And it might not be this employer, but somewhere down the line they can't just do whatever they want. Exactly. And I don't think that was the intent of this employer, but a ruling that says that this employer's pay scheme is acceptable would, in fact, allow employers to, after the fact, back into the math to show compliance, when, in fact, they were not paying the overtime premium for the overtime hours worked. Do you contend that, in this case, if 168 hours equals a full hitch, that, in fact, what's being worked here is 88 hours of overtime? Over the two weeks, yes. I mean, for the employees who work the full hitch, yes, they're working significant overtime hours. What they call hitch rate. I don't know where this word hitch comes from, but I saw it said hitch the first time I saw it saying that. Yeah, I don't know either. But, in a way, it's two weeks, and they're working 84 hours per week, and so each week is 44. So you're saying in a two-week period they work 88 hours of overtime. Correct. Which they should be compensated time and a half. Right, although the math shows that they were, in fact, paid the time, they just owed the half. Because the hitch rate, the blended rate, paid them the regular rate for those 88 hours, so really they're only owed that overtime premium of a half time. And that's what the back wage calculations were based on here. So it's a little less severe than I think Your Honor's imagining. The Court has no further questions. We ask that the Court affirm. Thank you. Thank you, Ms. Gilbert. Mr. Amos, you have some time reserved. Thank you, Your Honor. I'd like to start with, to just go over the intent of 309, and that is to allow an employer to compensate an employee who regularly works a fixed number of hours, a fixed amount for those hours regularly worked. And that is exactly what happened in about 90% of the case of the time here. All of these cases, from Asselta through the line of their cases at Site Asselta, all have a detailed examination of the actual wage agreement. And I believe that's of the utmost importance in this case. Fire and Safety originally employed consultants under the traditional method. They paid them straight time for 40 and time and a half for anything over 40. But as their business grew, their clients required them to work consistent 12-hour shifts. And what Fire and Safety did was the consultants that were subject to those types of clients, they switched them to a blended rate or switched them to a hitch rate, a fixed amount. They used their regular rate and their overtime rate prior to the transition to figure their hitch amount. And not only that, but some of the consultants, in fact, 11 consultants in the year of 2015, in the middle of this investigation period, always stayed hourly under the traditional method because they didn't work overtime consistently. I mean, Fire and Safety, and I believe the DOL is possibly agreeing with this and will concede this, but they never intended to violate the Act. And, in fact, they used the regular rates that are at issue here in this case to build this agreement. And this agreement was executed exactly as intended, 90% of the time. And the court latches on to 60 work weeks out of over 1,200 to say, where you pay less than or where you pay the hitch rate for less than 40 hours, you've got to throw the baby out with the bathwater. You've got to throw all 71 agreements out with just those 60 work weeks. There are 71 people that are subject to this lawsuit. That's less than one work week per person that they worked less than 40 hours and were paid the blended rate. Were the workers who worked no overtime compensated at the same hourly rate or the blended rate as those who did? I'm sorry, Your Honor, can you repeat that? Were the workers who worked no overtime, were they compensated at the same blended rate as those who did? No. They were paid their regular rate, and if they ever did work overtime, they were paid time and a half. They were under the traditional schedule and the traditional method under the Fair Labor Standards Act. So I think that's important for the court to understand that about 80% or 90% of the consultants did move to a hitch rate, but there's still a large number of consultants, 11 in 2015, that continue to be paid the traditional method. Those aren't part of the appeal. They're not part of the damages here, but I believe the court needs to be made aware of that, that fire and safety always intended to honor. That was not the people who were coming in new, though. These are people who had already been there, sort of grandfathered in, isn't it? No, there could have been workers that were there before, and, in fact, fire and safety employed not only consultants, but they employed maintenance personnel and they employed security personnel. They were always paid under the traditional method. Why? Because they didn't work a regular fixed number of overtime hours. Why did you choose to do this hitch rate and blended rate as opposed to just doing the traditional one? Sure, Your Honor, and that's because they regularly worked 44 hours of overtime in a week. So like Chief Judge Gregory's example, if you know your employee is always going to be due $700 for his work week, why can't you just cut him a check for $700? So you're saying it's the same thing? I'm saying you can when they do work their full work week. You do have to make a deduction. So you did it to make your accounting easier so that you just can say, I'm just going to give you one flat rate and not worry about calculating your pay? That's the reason you did it? For that 10 percent of the time, yes, Your Honor, and it overpaid the employees at the same time. Is it really that much difficult to calculate how much you make for 40 hours and then time and a half over in this day and age? Well, you would have to change the actual structure of the paychecks. I mean, companies do it all around the world. You've got huge companies. How many employees are you talking about here? You're talking about employees at one time, maybe 40 consultants. Forty people, and you changed it to make your job easier so you wouldn't have to calculate for that 40, and there are companies that do thousands of people and do this? Yes, Your Honor. What's the other reason you did it? That doesn't sound too plausible to me. What's the other one? Or is that the reason? Well, that's the reason that why would we have to go back to re-figure out their overtime rate? To comply with the Fair Labor Standards Act. But the Fair Labor Standards Act was always – Because if you do, you wouldn't be up here in front of us. But it was always – You just paid 40 hours straight regular raise and then time and a half over it. You wouldn't be in this court. You wouldn't be spending the money. Well, they wouldn't be for you. That might not be good for you, but I understand. That's why you would do it. Well, Your Honor, I can't stress enough that the agreement, the 309 agreement, was executed exactly as intended 90 percent of the time. And one last thing I would like to touch on is Chief Judge Greger, you asked, what's the evidence about this agreement? There's 13 affidavits that we've provided as well as the district court's acknowledgement. These individuals were sat down and they were told, here's your regular rate, here's your overtime rate at time and a half, and here's what your hitch rate is. And for those individuals that always worked the hitch, they got exactly what they bargained for. And to go back and to reformulate a regular rate that nobody agreed to is going to be a massive windfall for these employees at the benefit – or at the burden of the company. And, again, 24 of these consultants are going to, if this case is affirmed, are going to get damages, and they always worked 84 hours exactly as they agreed to. Two of those consultants which provided affidavits said they agreed to work exactly 84 hours. We would ask that the district – I'm sorry, that this court reverse the district court's decision and enter judgment in Fire and Safety's favor that it did comply with 778-309. Thank you. Thank you, Mr. Ames. We'll come down to Greek Council and proceed to the next case.
judges: Roger L. Gregory, James A. Wynn Jr., Stephanie D. Thacker